# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| MARLENE A. SMITH, *et al.*, | 3:11-cv-00314-LRH (VPC) |
| Plaintiffs, | |
| vs. | **AMENDED ORDER** |
| J.P. MORGAN CHASE BANK, *et al.*, | |
| Defendant(s) | |

Before the court is defendants' motion (collectively "Chase" or "defendants") to name plaintiff's counsel, William D. McCann ("Mr. McCann"), as a witness and to take his deposition (#124). Defendants also seek leave to re-depose plaintiff Marlene Smith ("plaintiff") with respect to certain communications she had with Mr. McCann. *Id.* Plaintiff opposed (#126) and defendants replied (#127). This order follows.

I. **Procedural History**

In her complaint, plaintiff alleges that she and her late husband owned a ranch in Colorado which they bought with a loan secured by a mortgage on the property (#1). The loan was later modified, and plaintiff and her husband then defaulted on the loan. *Id.* Efforts by the lender and/or a collection firm to collect the past due amounts followed. *Id.* The complaint alleges that plaintiff and her husband, as well as a tenant who was residing on the property, were notified of the foreclosure upon the property, and the tenant ceased making rent payments to plaintiff. *Id.* Faced with the impending foreclosure, plaintiff's husband took his own life in June 2010. *Id.*

The claims that survived defendants' motion to dismiss are: (1) violation of the Fair Debt

1  Collection Practices Act ("FDCPA"); (2) wrongful death pursuant to N.R.S. 41.085(2); (3) intentional
2  infliction of emotional distress; (4) negligent infliction of emotional distress; (5) intentional
3  interference with [rental] contract; and (6) invasion of privacy (#s37 & 49).

4  Plaintiff testified at her deposition that at the time Chase was allegedly dunning her husband
5  and making collection calls, the loan was current (#124-1, Ex. 1, Pl. Dep. Trans. 59:9-12; 118:20-
6  119:8; 170:24-173:10; 184:13-185:20; 238:3-19).

7  Sharon Stone ("Ms. Stone"), described in the complaint as the tenant at the Colorado ranch
8  property, was also deposed, and she was questioned about communications with Mr. McCann and
9  plaintiff before plaintiff filed her complaint. Ms. Stone testified that in September 2007, she moved
10 onto the Colorado ranch property and that she entered into a contract for sale on the property with
11 Michael Smith, the decedent, in November 2010 (#124-4, Ex. 4, Sharon Stone Dep. Trans. 25:17-
12 28:21). Ms. Stone also testified that in February 2010, plaintiff told Ms. Stone that she (the plaintiff)
13 intended to stop making the mortgage payment on the property:

> Q.  And what do you recall about Marlene – Marlene's conversations or discussions with you about Mr. McCann?
>
> A.  Marlene said – I believe it was February's payment. I was standing in the Pisa's parking lot and she was – I was talking to her on the phone and she said she wasn't going to make that payment until Bill did something because he was so smart and I said oh, Mike is going to flip his shit. She said, well, she wasn't making that payment. It didn't matter if I put the payment in the account right then or not. She wasn't making that payment until Bill did something.

20 *Id.* at 63:4-20.

21 Despite plaintiff's decision not to make the mortgage payment in about February 2012, Ms.
22 Stone continued to make her payments under the agreement with Michael Smith between February
23 2010 and June 2010. *Id.* at 64:12-65:1. Ms. Stone stopped making her payment after June 2010. *Id.*
24 at 60:16-17. Mr. Smith died on June, 5, 2010 (#1).

25 Ms. Stone testified that she had a phone conversation with Mr. McCann following Mr. Smith's
26 death, and that he identified himself as a lawyer (#124-4, Ex. 4, Sharon Stone Dep. Trans. 66:19-21).
27 She then testified at length about a meeting in Colorado before the late Mr. Smith's memorial service
28 in July 2010, during which Ms. Stone, plaintiff, Mr. McCann, and plaintiff's parents were all present.

There were no other lawyers present other than Mr. McCann, and he advised Ms. Stone that she should keep paying the mortgage and that he would keep her on the ranch as long as he could. *Id.* at 68:12-21. According to Ms. Stone, there was also a discussion that plaintiff planned to file a lawsuit against Chase for five million dollars and that Chase would be paying plaintiff "way more than $2000 a month." *Id.* at 69:12-21; 74:18-25. Ms. Stone also recalled a discussion about the basis of the lawsuit against Chase:

> Q. Tell me about that.
>
> A. They were telling me about another lawsuit on a credit card, I think they said Discover or because – I think they said Discover. It could've been a different one but some guy received so many calls from his credit card company that he committed suicide and that then his family sued and got like $5 million because the credit card company had just harassed him every single day.

*Id.* at 75:2-10.

After the June meeting in Colorado, plaintiff sent Chase two letters about the ranch property mortgage (#127, Exhs. 1 & 2). She instructed Chase to communicate with plaintiff either through "William D. McCann, Esq." or a another attorney from Colorado. *Id.*

In addition to the summary of deposition discovery recounted above, a summary regarding Mr. McCann's bar licensure is relevant to defendants' motion. Plaintiff filed her complaint in this action on May 2, 2011, and the following attorneys were listed as her counsel: William Raggio and John Desmond of Jones Vargas and Mr. McCann, a solo practitioner (#1). As the case progressed, two other attorneys from Jones Vargas acted as counsel: Justin Bustos and Miranda Mahe. However, Mr. Raggio passed away in February 2012, and Messrs. Desmond and Bustos moved to a different law firm (#52). Jones Vargas moved to withdraw as counsel in the case, and this court granted that motion, leaving Mr. McCann as the sole remaining attorney for plaintiff (#55).

In April 2007, Mr. McCann resigned from the practice of law in the State of California. Mr. McCann was admitted to the practice of law in the State of Nevada on October 7, 2010.[1] As a result, Mr. McCann was not licensed to practice law in any state from April 2007 until October 7, 2010, a

---

[1] Pursuant to Fed.R.Evid. 201 (b)(2) and (c)(2)l the court takes judicial notice of Mr. McCann's admission to the Nevada Bar (#124-2, Ex. 3).

3

period of approximately two and one-half years.[2]

## II. Legal Standard

The attorney-client privilege protects confidential communications between a party and his or her attorney in order to promote "full and frank communications between attorneys and there clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). "The party asserting the [attorney-client] privilege bears the burden of proving each essential element." *United States v. Ruehle*, 583, F.3d 600, 608 (9th Cir. 2009). Rule 502 of the Federal Rules of Evidence defines the attorney-client privilege as "the protection that applicable law provides for confidential attorney-client communications." The prerequisites to the creation of the attorney-client privilege are: (1) legal advice must be sought, (2) from a professional legal advisor in his or her legal capacity, (3) the communications must related to that legal advice, (4) they must be made in confidence; (5) by the client or the attorney, (6) the privilege is asserted by the client, (7) from disclosure by the client or the attorney, and (8) the protection must not be waived. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).

"Confidential" communication between and attorney and a client is defined under Nevada law as one "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." N.R.S. 49.055. Attorney or "lawyer" is defined as "a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation." N.R.S. 49.065. A representative of a lawyer is defined as "a person employed by the lawyer to assist in the rendition of professional legal services." N.R.S. 49.085.

## III. Discussion

There are three general time periods in which Mr. McCann met or had communications with plaintiff prior to his October 2010 admission to the Nevada Bar. Mr. McCann first met with the Smiths in Florida in February or March 2010. While plaintiff and her late husband sought legal advice from Mr. McCann at that time concerning their Colorado Inn and the mortgage on their ranch, Mr.

---

[2] Whether Mr. McCann is or is not registered to practice before the United State Patent and Trademark Office is irrelevant to this motion, since such registration is limited to matters set forth in 37 C.F.R. § 11.5.

4

McCann was not admitted to practice law in any state, and plaintiff admits she knew this (#126-1, Smith Decl.). Fundamental to a claim of attorney-client privilege is that the person dispensing the legal advice must be licensed to practice law. Mr. McCann was not, and plaintiff knew that; therefore, any discussions Mr. McCann had with plaintiff during their meeting in Florida are not protected by the privilege.

The second round of communications between plaintiff and Mr. McCann occurred after plaintiff's husband passed away in June 2010. Mr. McCann continued to communicate with plaintiff and also met with her before or after her late husband's memorial service. The record indicates that Mr. McCann, plaintiff, her parents, and Ms. Stone were all present. Mr. McCann was still not licensed to practice law, and the communications were not confidential; therefore, the attorney-client privilege does not apply.

The third time period overlaps somewhat with the second and concerns the balance of the summer of 2010. Mr. McCann attests that in mid-June 2010, Mr. Raggio asked him to communicate with plaintiff as Mr. Raggio's paralegal or agent, and that Mr. McCann did so (#126-2, McCann Decl.). A representative of a lawyer is defined as "a person *employed* by the lawyer to assist in the rendition of professional legal services." N.R.S. 49.085 (emphasis supplied). Mr. McCann has provided no evidence that he was an employee of Mr. Raggio or his law firm, Jones Vargas; therefore, Mr. McCann's claim he served as a representative of Mr. Raggio or Jones Vargas fails. The evidence provided to the court indicates that plaintiff sent letters to defendants in June and August 2010 about the mortgage and instructed them to communicate with plaintiff either through "William D. McCann, Esq." and a Colorado lawyer (#127, Exhs. 1 & 2). Clearly, plaintiff held out Mr. McCann as one of her attorneys.

The communications outlined above are not covered by the attorney-client privilege, and plaintiff as not met her burden to establish otherwise. *United States v. Ruehle*, 583 F.3d at 608. The record before the court reveals that plaintiff's and Ms. Stone's recollections of the events that occurred from February through August 2010 differ significantly, and that Mr. McCann's deposition may lead to the discovery of admissible evidence that may support or refute plaintiff's surviving claims.

The court notes that at some unidentified point after Mr. McCann was admitted to the Nevada

5

Bar in October 2010, he became "fourth chair" in representing plaintiff, but Mr. McCann does not state when this occurred (#126-2, McCann Decl.). Mr. McCann has provided no retainer agreement or other evidence to demonstrate exactly when he undertook representation of plaintiff as a licensed lawyer in Nevada, although he appears as plaintiff's co-counsel on the complaint filed May 2, 2011 (#1).

### IV. Conclusion

Plaintiff has not met her burden to establish that an attorney-client relationship existed because Mr. McCann was not licensed as a lawyer during the period of time which is the subject of defendants' motion. Plaintiff has also failed to establish that Mr. McCann was an employee of either Mr. Raggio or Jones Vargas; therefore, he was not a "representative" of a lawyer. N.R.S. 49.085. Based upon the record before the court, defendants' motion for leave to name plaintiff's counsel as witness (#124) is **GRANTED** as follows:

1. Defendants may take the deposition of Mr. McCann concerning his communications with plaintiff about this action from February 2010 through October 6, 2010;

2. Defendants may re-depose plaintiff for a maximum of three hours to examine plaintiff concerning her communications with Mr. McCann about this action during the period from February 2010 through October 6, 2011.

Dated this 9th day of January, 2013.

_____
UNITED STATES MAGISTRATE JUDGE

6